IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| **INTEGRITY INTERNATIONAL, INC.,** *d/b/a* **TARRENPOINT**, | § § § § |
| *Plaintiff,* | § § |
| v. | §   Civil Action No. 1:17-CV-0794 (DNH/ATB) § (JURY) |
| **HP, INC.,** and **HEWLETT PACKARD ENTERPRISE COMPANY**, | § § § |
| *Defendants.* | § § |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Integrity International, Inc. d/b/a TarrenPoint ("Plaintiff") files this Original Complaint against Defendants, HP, Inc., and Hewlett Packard Enterprise Company (collectively "Defendants"), and respectfully states as follows:

### A.
### PARTIES

1. Integrity International, Inc. d/b/a TarrenPoint is a Texas corporation with its principal place of business in Houston, Texas.

2. Defendant HP, Inc. (formerly known as "Hewlett-Packard Company"), is a Delaware corporation that conducts business in the States of Texas and New York. HP, Inc., may be served pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure by delivering a copy of the Summons and this Complaint to HP, Inc.'s registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

3. Defendant Hewlett Packard Enterprise Company (also formerly known as "Hewlett-Packard Company"), is a Delaware corporation that conducts business in the States of

Texas and New York. Hewlett Packard Enterprise Company may be served pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure by delivering a copy of the Summons and this Complaint to Hewlett Packard Enterprise's registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## B.
## JURISDICTION AND VENUE

4. The Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332 because the claims at issue are between citizens of different U.S. states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5. Venue is proper under 28 U.S.C. § 1391 and is mandatory in New York because the parties entered into a contract with a mandatory forum-selection clause requiring litigation in "the ordinary courts of New York."

## D.
## BACKGROUND FACTS

6. Beginning in 1994, Plaintiff provided content solutions to Compaq, Defendants' predecessor, pursuant to written services contracts. In order to provide the requested services, Plaintiff was required to hire and pay employees and contractors and front necessary expenses.

7. At first, Defendants paid most of Plaintiff's invoices on time and within 45 days. However, beginning around 2010, Defendants stopped paying Plaintiff's invoices on time, which created serious cash flow issues for the company. In 2011, at Defendants' insistence, the parties entered into a new "Standard Services Agreement" wherein Defendants changed payment terms to "end of accumulation period plus 45 days," thereby requiring contractors such as Plaintiff to essentially finance Defendants' projects on an interest-free basis while waiting months after the

provision of services to receive payment, even as such contractors were obligated to pay their employees and contractors in accordance with applicable payday laws. Plaintiff had no choice but to agree to Defendants' terms and adjusted its finances accordingly.

8. However, despite incredibly favorable contract terms that enabled Defendants to enjoy the benefits of Plaintiff's services for months before they actually had to pay for them, Defendants continued to pay Plaintiff's invoices late.

9. Plaintiff met with Defendants repeatedly to discuss Defendants' breach of the payment terms of the parties' agreement and to confirm that Defendants would either comply with the contract or pay late fees. Although Defendants still refused to pay invoices on time, for a period of time, they occasionally paid late fees assessed by Plaintiff, which helped Plaintiff manage the increasing costs accruing as a result of Defendants' breaches.

10. For example, due to Defendants' failure to pay invoices within 90 days—the standard payment period required by most banks—Plaintiff was forced to accept high interest rates for necessary lines of credit, when it could obtain credit at all. Sometimes, in order to cover payroll, Plaintiff was forced to accept loan funds from lenders who charged loan fees instead of interest, which in some cases equated to over 120% A.P.R.

11. Plaintiff was doing all it could to stay afloat and keep the business running. Plaintiff escalated its complaints to Defendants regarding Defendants' continued failure to timely pay invoices or pay late fees and requested improved payment terms.

12. Rather than honor the terms of the Agreement it forced on Plaintiff, Defendants asked for Plaintiff's patience and manipulated it to offer even lower pricing for Plaintiff's services with the promise of additional work. But like its promise to timely pay invoices, Defendant's

promise of more work was never fulfilled. On the contrary, Defendant doubled down on its misconduct and stopped paying for some of Plaintiff's services altogether.

13. Despite there being no issue with the quality of its work, by 2013, Defendants began cancelling their work with Plaintiff and required Plaintiff to transition projects to competitors.

14. Defendants also, without good cause and with the intent to further burden Plaintiff's business and punish it for complaining about Defendants' failure to timely pay invoices, demanded an audit of all payments made to Plaintiff from 2011 to 2013. Plaintiff spent over $100,000 in administrative costs in order to comply with the audit request. No overcharges or improper payments were identified.

15. In 2014, with Plaintiff's business on the precipice of collapse due to the cascading effects of years of grossly delayed payments, Plaintiff met with Defendants' top-level executives to request a return to 30-day payment terms. Defendants acknowledged the impact its late payments had on Plaintiff's business and claimed they would agree to Plaintiff's request; however, after doing so, Defendants escalated the rate at which they abruptly cancelled Plaintiff's contracts or failed to renew them without cause.

16. Shortly thereafter, Plaintiff submitted audits for 2012 and 2013 which demonstrated Defendants' routine late payments. Plaintiff requested that Defendants pay all accrued but unpaid late fees. Defendants refused and continued to transition Plaintiff's work to its competitors. Plaintiff's business never recovered.

17. By June 30, 2016, all of Plaintiff's contracts with Defendants had been cancelled.

18. In October 2016, Plaintiff again requested that Defendants tender the late fees due under its invoices. Defendants acknowledged there was no wording in the relevant Standard

Services Agreement that precluded the Plaintiff from charging late fees. Defendants advised Plaintiff they would investigate the issue, but they never responded and never paid.

19. Defendants used Plaintiff to provide interest-free financing for its projects by delaying the payment of invoices for months. Defendants made promises of more work in exchange for Plaintiff's patience and agreement to lower its prices. Plaintiff was a small business that provided support services to Defendant; it was not in a position to bankroll Defendants' projects.

20. Defendants never intended to honor contractual payment terms. Defendants never intended to provide Plaintiff additional work. Instead, Defendants made these false promises to get the benefits of Plaintiff's services for as long as possible until it could line up new suppliers. By failing to timely pay—or pay at all—for Plaintiff's work, and by refusing to pay late fees assessed by Plaintiff to alleviate the burdens of Defendants' contractual breaches, Defendants ultimately caused the demise of Plaintiff's business. As a result of Defendants' actions, the Plaintiff is entitled to actual and punitive damages and equitable relief in an amount to be determined at trial.

## E.
## CAUSES OF ACTION

### 1. <u>Account Stated</u>

21. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

22. Plaintiff presented an account to Defendants.

23. Defendants did not object to the statement of account and accepted it as correct.

24. Despite promising to pay the amount stated, Defendants failed to do so.

25. As an actual and proximate result of Defendants' failure to pay all amounts due on Plaintiff's account, Plaintiff has suffered damages in an amount to be proven at trial.

## 2. <u>Breach of Contract</u>

26. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

27. Plaintiff and Defendants entered into a valid and enforceable contract whereby Defendants were obligated to timely pay invoices for Plaintiff's services, and to pay late fees for untimely paid invoices.

28. Plaintiff fully performed its obligations under its agreement with Defendants, yet, Defendants failed repeatedly in its obligations to Plaintiff by breaching the payment provisions of the parties' contract.

29. As an actual and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial.

## 3. <u>Breach of the Duty of Good Faith and Fair Dealing</u>

30. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

31. In the alternative, and without waiving or limiting Plaintiff's allegations, Plaintiff and Defendants entered into a valid and enforceable contract whereby Plaintiff agreed to provide services to Defendants in exchange for payment.

32. Plaintiff fully performed its obligations under its agreement with Defendants. However, Defendants frustrated the purpose of the contract by failing to perform the things necessary to carry out the purpose for which the contract was entered, willfully rendering imperfect performance, and/or destroying or injuring Plaintiff's right to receive the fruits of the contract.

33. As an actual and proximate result of Defendants' misconduct, Plaintiff has suffered damages in an amount to be proven at trial.

## 4. <u>Quantum Meruit/Unjust Enrichment</u>

34. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

35. In the alternative, and without waiving or limiting Plaintiff's allegations, Defendants, with full knowledge and consent, received from Plaintiff the benefit of goods and services, including the provision of financing for Defendants' projects, provided by Plaintiff in good faith.

36. Plaintiff reasonably expected to be compensated for the services provided to Defendants.

37. Defendant benefited as a result of the services provided by Plaintiff at Plaintiff's expense.

38. The reasonable value of the services provided by Plaintiff is $2,122,777.43.

39. Plaintiff is entitled to recovery of the value of such services. Alternatively, equity and good conscience require restitution to Plaintiff of the value of such services.

### 5. **Fraudulent Inducement**

40. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

41. Defendants made representations to Plaintiff that Defendants would pay Plaintiff according to the terms set forth in its agreements with Plaintiff and would provide an increased volume of work if Plaintiff accepted payment terms less favorable to Plaintiff and more favorable to Defendants and if Plaintiff agreed to lower its rates.

42. At the time Defendants made these representations, Defendants knew they were false or made them recklessly without regard for their truth. Defendants did not intend to timely pay for Plaintiff's services. Defendants did not intend to provide Plaintiff additional work.

43. Defendant made these representations to induce Plaintiff to accept payment terms more favorable to Defendants and to lower its fees, which had the effect of forcing Plaintiff to finance Defendants' business.

44. In express reliance on Defendants' promise of additional work, Plaintiff agreed to Defendants' requested terms.

45. As a direct and proximate result of Defendants' fraud, Plaintiff has suffered recoverable damages in an amount to be determined at trial.

## F.
## JURY DEMAND

46. Plaintiff demands a jury trial and has paid the appropriate fee.

## G.
## PRAYER

For the foregoing reasons, Plaintiff respectfully requests that Defendants be cited to appear and answer this Complaint and, after trial, that the Court enter judgment for the Plaintiff against the Defendants for all of the Plaintiff's actual and exemplary damages, plus pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which the Plaintiff may be justly entitled.

DATED: July 18, 2017

        Respectfully submitted,

        THORN GERSHON TYMANN & BONANNI, LLP

        */s/ Matthew H. McNamara*
        Matthew H. McNamara
        New York Bar No. 510394
        5 Wembley Court
        New Karner Road
        P.O. Box 15054
        Albany, New York 12205
        (518) 464-6770 tel.
        (518) 464-6778 fax
        matt.mcnamara@tglawyers.com

Justin W. R. Renshaw\*
RENSHAW, P.C.
2900 Weslayan, Suite 230
Houston, Texas 77027
Phone: 713.400.9001
Fax: 713.400.9006
justin@renshaw-law.com

Shannon A. Lang\*
SHANNON A. LANG, PLLC
440 Louisiana Street, Suite 900
Houston, Texas 77002
(832) 479-9400 tel.
(832) 479-9421 fax
shannon.lang@shannonlanglaw.com

\* *pro hac vice* application forthcoming

*Counsel for Plaintiff Integrity International, Inc.
d/b/a TarrenPoint*